FEE PAID

Julian Brew (SBN 150615)
julian@cypressllp.com
**CYPRESS LLP**
11111 Santa Monica Boulevard, Suite 500
Los Angeles, CA 90025
Telephone:  424-901-0123
Facsimile:   424-750-5100
Attorneys for Plaintiff-Relator,
**RELATOR LLC**

**FILED**
CLERK, U.S. DISTRICT COURT

**MAR 21 2023**

**CENTRAL DISTRICT OF CALIFORNIA**
BY: _____EEE_____ DEPUTY

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

8
9
10

**UNITED STATES OF AMERICA,**

        Plaintiff,

*ex rel.* **RELATOR LLC**, a California limited liability company,

        Relator,

    v.

**ERIC BOWLBY,** an individual;
**KENNETH BOWLBY**, an individual; and **AMERIFIRST FINANCIAL, INC.**, an Arizona corporation, and DOES 1-10,

        Defendants.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.

**LACV23-02117-SVW-RAGOx**

**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**

**FILED** *IN CAMERA* **UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE ON PACER**

**JURY TRIAL DEMANDED**

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT

Plaintiff RELATOR LLC ( "Plaintiff") complains of **Eric Bowlby**, an individual, **Kenneth Bowlby**, an individual, **Amerifirst Financial, Inc.** ("AFI"), an Arizona corporation, and DOES 1-10 (collectively "Defendants").

## JURISDICTION & VENUE

1.     This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732.

2.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[1]

3.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendants' acts that form the basis of this Complaint occurred in the Central District of California. Plaintiff The United States is also located in the Central District of California.

4.     Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

---

[1] AFI operates throughout California, and has an active branch in San Clemente, California, in the Central District of California. AFI has formed an operating entity in California and transacts business in California.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

**INTRODUCTION AND SUMMARY**

5.     In this matter, a mortgage lender used his lending business to misappropriate millions of dollars from the US Federal government's Paycheck Protection Program ("PPP"). In order to obtain the loan, the Defendants presented many falsified loan documents to the SBA. Defendants did not have any economic need for the loan, they simply took advantage. In fact, Eric Bowlby's lending business was booming. Defendants had no economic need for payroll assistance, assuming the loan was used on payroll. Defendants falsified additional documents which were presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer.

6.     Eric Bowlby used his mortgage lending business, Amerifirst Financial, Inc., to apply for and receive a PPP loan totaling **$6,229,763.00**, purportedly to cover payroll costs. However, AFI and its owner Eric Bowlby:

    a.  Falsified loan eligibility;

    b.  Falsified business type and industry type;

    c.  Falsified the use of the loans on authorized expenses;

    d.  Falsified the economic necessity for the loans; and

    e.  Falsified the need for loan forgiveness.

7.     <u>Obvious Regulations Regarding Money Lenders</u>. AFI applied for and received a PPP loan in the total amount of **$6,229,763.00**, purportedly to cover payroll costs, however this loan was not authorized because AFI is a <u>money lending</u> business and therefore *ineligible* to receive PPP loans. Although the vast majority of American industries are allowed to take PPP loan, a very few select industries are not allowed. One such type of business, are money lenders. The rationale is that money lenders have sources of capital available to them to support their payroll costs.

8.     <u>Falsified Business Type and Industry Type</u>. In their PPP loan application, the Defendants falsified the nature of their business. However, in their

COMPLAINT

application they purported it to be "Miscellaneous Financial Investment Activities", in order to hide the fact that they are <u>direct money lender's</u> and are specifically disallowed from applying. The CEO is an industry-recognized leader in lending and banking as described on AFI's website. Furthermore, AFI's own Articles of Incorporation with the California Secretary of State lists their business type as "Residential Mortgage Banking & Origination." Taken by itself, the false reporting of their business is not a small lie and is at least concerning. But taken in the context of the other incorrect information provided, it is evident that Defendant Eric Bowlby and his company understood they were involved in fraud and orchestrated its various components deliberately. This is no small deceit, but a big plan to take a large amount of money which they knew was ill-gotten.

9.     <u>No Economic Necessity and Mortgage-Backed-Securities (MBS)</u>. The PPP was made to help struggling businesses pay their workers. It is not a free excuse to raid government coffers by wealthy businessmen. AFI did not need the loans – there was no "need" or "economic necessity" to pay Defendant's payroll expenses.[2] AFI did not and cannot show any decline in revenue during the pandemic. In fact, during this time period mortgage lenders experienced record profits. This is because of the housing price increases and housing crisis. It is, also because of the Federal government's policy to purchase Mortgage Backed-Securities (MBS), which provided mortgage lenders like Defendant a steady source of high income.[3]

---

[2] AFI is not a small business in dire financial straits, but rather a well-financed finance company. Public information shows their revenue was not declining, and their own statements indicate massive growth and profits. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

[3] Agency MBS purchases are issued by the Federal government. The US Federal Reserve has a $1.25 trillion program to purchase mortgages which was restarted on March 15. 2020 as a result of the COVID-19 crises. The result of this program is to provide mortgage lenders with a guaranteed way to sell their mortgage assets. Mortgage lenders like Defendant enjoyed record profits during this time and benefited greatly from this program.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT

10.    Indeed, AFI was highly profitable when they took the loan in 2020. They were also highly profitable in 2021 when they asked for loan forgiveness. AFI currently has upwards of $866.5 million in annual revenue. To achieve this current level of revenue, AFI required large capital sources in 2020 to make the many millions of dollars in loans from which it is now reaping interest income. In other words, AFI certainly had the money to pay their own payroll when they applied for the PPP loan. At the time of the loans, AFI had hundreds of millions of dollars in capital. Yet Defendants falsely certified they had "economic uncertainty" so they could take financial assistance from the US taxpayer.

11.    AFI actually expanded its business throughout 2019 and 2020 (when it received its PPP loan). This included plans to open 4 new branches in Montana, Alaska, New Hampshire, and Mississippi.

12.    AFI was proud to announce that 40 of their Mortgage Consultants were named in the top 1% of Mortgage Originators by Mortgage Executive Magazine for 2020. Furthermore, AFI announced that over 40 of their Mortgage Consultants received the Scotsman Guide award for Top Originators of 2020. Far from needing the money, Defendants took advantage of the opportunity and used it as a windfall.

13.    <u>Direct Lending</u>. AFI was <u>ineligible</u> to receive any SBA loans whatsoever. While almost every industry type is allowed to take PPP loans, a very few select number of industries are not permitted, including mortgage lenders like AFI. The rationale is that money lenders are cash rich and have ample financial resources to pay their own payroll expenses, therefore they should not take away money from small businesses which don't have ready access to liquid funds. The Defendant's business makes it ineligible for SBA loans because they are **<u>money lenders</u>**.[4] Most mortgage lenders offer conventional conformed loans which conform to Freddie Mac and Fannie Mae guidelines and can be sold on the

---

[4] The Defendant is a direct lender. They specialize in home mortgage loans.

COMPLAINT

C Y P R E S S   L L P
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

secondary market to government entities. However, some lenders offer portfolio loans which do not conform to these governmental guidelines and accordingly cannot be sold to government entities. These loans are typically held by the lender in a portfolio to collect interest and include Jumbo Loans, Bank Statement Loans, and other Non-Qualified Mortgage Loans. AFI is a direct portfolio lender that provides these portfolio money loans to consumers, for mortgages. In a February 16, 2023, phone conversation with AFI underwriter, Cheryl Printz, she confirmed that AFI is indeed a portfolio lender, retains some of their loans in a portfolio, and sells the remainder of their loans in one to three months. AFI's website describes the corporation as a residential mortgage lender. Therefore, Defendant's certification was false because **they <u>most definitely are</u> the type of business/industry which is prohibited from SBA loans**. Yet, on its application it excludes any mention of its banking and lending activities.

14. <u>Money Not Returned</u>. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The **$6,229,763.00** in funds should have been returned immediately. These loans should never have been sought in the first place. Yet the Defendants went further by obtaining total loan forgiveness, billing the US taxpayers millions of dollars. *Defendants have not returned the loan proceeds*.

15. <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further documents to receive loan forgiveness. Defendants had to attest as to the use of the funds and the amount used on authorized purposes. They were not because Defendants could not comply with the requirements of forgiveness given their business type. So Defendants also lied on their forgiveness documents and application.

16. <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and intentionally made many materially false statements to the government and bank to obtain the loans.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

17.     Plaintiff brings this action as relator on behalf of the United States to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 Plaintiff gave notice of its intent to file and full disclosure of the evidentiary basis to the Department of Justice ("DOJ").

## THE PARTIES

18.     Plaintiff is a California limited liability company with its principal place of business in Los Angeles, California.

19.     Defendant Eric Bowlby is an individual and, at all relevant times herein, is and was the Chief Executive Officer, director of AFI.

20.     Defendant Kenneth Bowlby is an individual and, at all relevant times herein, is and was the Board Member of AFI.

21.     Defendant AFI is a Delaware corporation formed in 1998 with its principal place of business, 1550 E McKellips Road, Suite 117, Mesa, Arizona 85203.

22.     AFI is a mortgage lender which directly provides Conventional Home Loans, FHA, VA, Refinancing, and money loans to people in return for an ownership interest in their homes.

23.     The true names and capacities, whether individual, partner, associate, corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein mentioned.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of said DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained.  Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

7

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

24. Plaintiff is further informed and believes that each of the Defendants, whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

25. Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified and/or acquiesced in the acts and omissions of each of the remaining Defendants.

26. Plaintiff is further informed and believes that each of the Defendants herein, whether named as DOES or otherwise, acted in concert, agreement and conspiracy with the other Defendants for the common purpose of engaging in a scheme to defraud as alleged below.

## THE CARES ACT AND PAYCHECK PROTECTION PROGRAM

27. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

28. The CARES Act authorized loans to eligible small businesses struggling to pay employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

29. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

30. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

authority for the PPP. On June 5, 2020, the PPP Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

31.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

32.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative) had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

33.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

34.    After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program

COMPLAINT

Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General

Eligibility to receive a PPP Loan:

| | | | |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐Yes | ☐No |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its

PPP loan application (SBA Form 2483), the PPP borrower's false certification

caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's

Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that

contained the PPP borrower's False Statement.

    35.    SBA Form 2483 includes the following certification, among others: "I

have read the statements included in this form, including the Statements Required

by Law and Executive Orders, and I understand them" (the "Understanding

Certification").

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

36.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

37.    SBA Form 2483 also includes the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

38.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

39.    SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

40.    SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (the "Single Loan Certification").

41.    SBA Form 2483 also includes the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in

all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (the "No False Statements Certification").

42.    After the borrower submitted a PPP loan application, it was processed by the participating lender. If the PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lender and be responsible for its repayment.

43.    Under applicable SBA rules and guidance, recipients of PPP loans could apply to have principal and interest on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

44.    Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

45.    More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

(1)    The dollar amount for which forgiveness is requested:

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2)   I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

(3)   The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

(4)   The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

/ / /

/ / /

/ / /

13

COMPLAINT

46.   13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes lenders like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

47.   On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.COMMERCE. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. Id.

48.   With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113, 120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR 120.110 eligible for a PPP loan?"*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13**

C Y P R E S S   L L P
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

14

**C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter**

49.    The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter states as follows:

### CHAPTER 3: INELIGIBLE BUSINESSES

#### A.  TYPES OF INELIGIBLE BUSINESSES

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1.  Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may be eligible). 13 CFR § 120.110 (a)

2.  Businesses Engaged in Lending 13 CFR § 120.110 (b).

    a.  SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investment, or to an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business. This prohibits SBA Loans to:

        i.   Banks;

        ii.  Life Insurance Companies (but not independent agents);

        iii. Finance Companies;

        iv.  Factoring Companies;

        v.   Investment Companies;

        vi.  Bail Bond Companies; and

        vii. Other businesses whose stock in trade is money.

    b.  The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

        i.   A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

        ii.  A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

        iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

        iv.  A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

Effective October 1, 2020                                                          Page 141

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

## DEFENDANTS' FRAUD

50.    During round 1 of the PPP, Defendant AFI applied for a PPP loan for **$6,229,763.00**. It was approved on April 27, 2020, by the SBA for the full amount, which was disbursed. The loan was facilitated by Little Horn State Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had 471 employees for which it needed the loan. This loan was forgiven on February 16, 2022.

51.    AFI as admits to being a direct lender on its website, and through its licensure and public statements about its products, yet not on its PPP loan application and supporting documents. AFI is expressly prohibited from receiving SBA loans, including PPP loans. AFI's CEO, Eric Bowlby, is a sophisticated, experienced businessman. He knew about the restrictions. The legal and financial experts he has hired over the years would have known this. Eric Bowlby intentionally broke these clear rules knowing what he was doing. He has navigated the highly regulated business of lending for decades since founding the company. He has successfully expanded the mortgage company and would have had to manage and investigate the many regulations encountered along the way. He would have quickly discovered that these loans were not permitted, especially given the amounts involved and the expertise and capabilities of the people working in his company.

52.    In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required Economic Certainty certification on the Borrower Application Form  stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

53.    AFI abused the PPP program, from misrepresenting its economic need for the loan to willfully ignoring its ineligibility, to maximizing the amount of the loan and then obtaining loan forgiveness. Discovery will reveal where the millions

in PPP funds were actually spent, but what is obvious is that Defendants *did not need any money from US taxpayers*. The business was lending other people money. AFI is and was highly profitable during the pandemic, just like most in their industry. AFI did not suffer any business loss and certainly had the money to pay their own worker wages. Their "stock in trade" is money and business was booming.

54.    Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

55.    The proceeds of the PPP Loans were not and could not have been used only for authorized purposes consistent with the PPP Rule, because, among other things, the Defendant was obviously not allowed to take PPP loans because of their industry type - money lenders. Therefore, when Defendants made the Use of Proceeds Certification, the certification was false.

56.    The proceeds of the PPP Loans were not necessary to support the ongoing operations of AFI. The company's enjoyed record high business achievements since 2020 until today. It has been widely reported that mortgage lenders, like the Defendants' were highly profitable during the housing market price increases and high demand in 2020 and 2021. This company had considerable financial resources to pay its own workers, assuming that is where the money was spent rather than into the pocket of the CEO and its executives. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

57.    The PPP loan money was only allowed to be used on authorized expenses. The proceeds of the PPP Loan were not permitted to be used to pay business costs for a business in the lending industry, therefore when Defendant made the Worker Retention and Payroll Certification, the certification was false.

17

58.    By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

59.    The Defendants actively pursued and obtained loan forgiveness. Because AFI is prohibited from obtaining any PPP loans, its representation on its forgiveness application  that it spent 100% of the loan proceeds on eligible expenses was not truthful. The SBA would not have forgiven the loans if they knew Defendants' certifications described above were false.  They also would not have forgiven the loans if they knew the proceeds had been used to increase profits instead of paying their employees.

60.    As a result of the forgiveness, Defendants have not repaid the loan and have kept the proceeds, and the loan has been repaid with money from taxpayers, including the small businesses and owners who were supposed to receive the PPP funds instead of repaying a profitable mortgage lender's loan that it never should have received, let alone had forgiven.

## THE FALSE CLAIMS ACT

61.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property

18

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

> 31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

> 31 U.S.C. § 3729(b)(2) (2020).

62. A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-09928.COMMERCE.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT

**FIRST CAUSE OF ACTION**

**FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))**

63.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

64.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

65.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans.  Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

66.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

67.     The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

68.     Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein, and attorneys' fees in an amount to be proven.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

## CONCLUSION

69.    Eric Bowlby and his company abused the PPP. The PPP was meant for struggling businesses. Now that program is dry. The American people have a right to reconciliation.

## **PRAYER FOR RELIEF**

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 20, 2023                    CYPRESS LLP

                                By:    /s/ Julian Brew
                                _____
                                JULIAN BREW
                                Attorneys for Plaintiff-Relator
                                RELATOR LLC

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT